Curia, per
Johnson, J.
This case presents two ques-ions.* First. Whether the assignment made by Rebecca Simons, (nowWilson)tothecomplainantof herinterestin the estate of her deceased husband, Samuel B. Simons, pending a suit in chancery to recover it, was or was not void, as constituting what is called champerty,
Secondly. How far the release subsequently executed by Orran Byrd, and Wilson and wife (late Rebecca Simons) to Samuel Simons, operates as a bar to the complainant’s rights under the assignment to him ?
In relation to the first of these questions it may be necessary to premise, that the complainant paid to Mrs. Wilson, as a consideration for the assignment made to him in the first instance, twelve hundred dollars, and that he afterwards voluntarily superadded about two hundred dollars more, making in the whole about fourteen hundred dollars.
Judge Blackstone (4 Comm. 135) derives the term “champerty” from the words campi partitio, and if we take the literal interpretation of these terms, as descriptive of the offence, it will, I think, follow that it consists in promoting law suits, by furnishing the means of carrying them on, and speculating in the result, by sharing the profits, and never was intended to apply to a bona fide purchaser of any right, whether in possession or in action. It is, according to Lord Coke, the most odious species of maintenance, Bacon’s Ab. tit. Maintenance A. 2; and is punished in all actions, real personal or mixed. But it will not be champerty if A contracts with B for a manor, for which B is afterwards impleaded, and pendente lite B conveys it to A (Id. A. 3.) So if a stranger purchase bona fide, pendente lite, it is no maintenance, (Id. A. 5.)
The complainants in this case did purchase, for a consideration, *563 agreed upon with Mrs. Wilson, her whole interest in this estate. It was not, therefore, a speculation on the probable result, or a sharing of the profits, but a *bona fide sale for a valuable consideration ; and whatever might have been the consequences of an act of champerty on the rights of these parties, they do not attach, as the offence has not been consummated.
The remaining question is one of more difficulty. Orran Byrd, as the administrator of Samuel B. Simons, had in law the exclusive right to receive all moneys which belonged to that estate, from whomsoever due, or on whatever account. By the terms too of the award, which by its confirmation became the judgment of the court, Samuel Simons was directed to pay the amount to the joint receipts of Byrd and Mrs. Wilson, and under it the decree could not have been satisfied without his receipt. He had a right, therefore, to stipulate as to the terms on which he would give his receipt, at least so far as a moiety of the demand. He was clothed too with the authority of Wilson and wife to receive the whole. It is said, however, and the proof is very satisfactory, that there was a combination between Samuel Simons and Byrd to defraud the plaintiff, and that Simons entered into the compromise with the avowed determination of preventing the complainant fromderivingany benefitfrom his contract, and that the means resorted to was, by paying over the money to Byrd, who was irresponsible on account of his insolvency. The equitable rights of the complainant are opposed by the direct legal right of Byrd to receive the money, and it appears to me that no contract or combination of circumstances to which Byrd himself was not a party, could divest him of that right; for it was one with which the law had clothed him. So far, therefore, as relates to the money actually received, the complainant must be regarded as concluded.
The amount of the decree against Samuel Simons was something upwards of §6,000, and by the compromise entered into with Byrd, he paid it off with §4,500; *and if the release is to be considered as conclusive, Samuel Simons would pocket, as the fruits of his iniquity, more than §1,500, upwards of twenty-five per cent, on the amount of his debt. Let it be asked, on the broad principles of equity and natural justice, is he entitled to retain it? I think not. There was no consideration for the release beyond the sum paid. The debt was then due and owing, and although by the forms of law, the complainant, in that case, could not then, have taken out process against the defendant on the decree, the obligation on him was the same. In point of law, therefore, it might well be questioned, whether the release was binding. But again, Byrd in making this compromise acted in the double character of administrator of Samuel B. Simons, and as agent of Wilson and wife. He had no authority from them to make it. It was, therefore, a fraud upon them, and Samuel Simons being a particeps criminis, is clearly liable, except so far as he is protected by the positive rules of law.
The rights of the complainant, under and by virtue of the assignment made to him by Mrs. Wilson, although not strictly legal, are such as the law recognizes. The courts of law, in some instances, and the courts of equity will always protect them. And I think it has been well maintained by the cases cited in the argument, that if one *564 concerts with him who stands in a fiduciary relation to commit a fraud on the person beneficially interested in the subject matter, that he is answerable, at least, to the extent that he is benefitted by it. 3 Johns. 425. 2 P. Wms. 608. 1 Mad. 256. 17 Ves. 167.
It is therefore ordered, that the defendant, Jacob C. Levy, do pay to the complainant, out of the estate of his testator, Samuel Simons, the amount of the decree obtained against him at the suit of Orran Byrd, administrator of Samuel B. Simons and Rebecca Simons, *de-therefrom the sum of him to the said Orran Byrd, on account thereof, with interest thereon and costs of this *uit.

Decree affirmed.